# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| ROBERT HOLMES, III, | ) |
|           Plaintiff, | ) Case No.: 2:13-cv-01166-GMN-GWF |
| vs. | ) |
| | ) **ORDER** |
| FRANK DREESEN, AW, *et al.*, | ) |
|           Defendants. | ) |

Pending before the Court is the Motion for Summary Judgment (ECF No. 20) filed by Defendants Brian Williams, Francis Dreesen, Rashonda Smith, and Tiffany Garnett (collectively "Defendants") on June 9, 2014.  Plaintiff Robert Holmes, III ("Plaintiff"), who is proceeding pro se, filed an untimely Response to the Motion for Summary Judgment (ECF No. 35) on September 10, 2014.  Plaintiff also improperly filed a second copy of his Response as a Motion to Dismiss the Motion for Summary Judgment (ECF No. 36) that same day. Subsequently, on September 29, 2014, Defendants filed a Reply to the Response (ECF No. 37) and a Response to the Motion to Dismiss (ECF No. 38).

For the reasons discussed below, the Court **Grants** Defendants' Motion for Summary Judgment and **Denies** Plaintiff's Motion to Dismiss.

## I.    BACKGROUND

According to the operable First Amended Complaint (ECF No. 13), Plaintiff was an inmate at Southern Desert Correctional Center ("SDCC") between July 13, 2011 and July 3, 2013, the time period relevant to this action. (Am. Compl. at 1, 4–6, ECF No. 13).  Plaintiff initiated the present action on July 7, 2013, seeking to bring claims against SDCC and several individuals employed at SDCC in their official and individual capacities. (App. to Proceed *in Forma Pauperis*, ECF No. 1).  Following a Screening Order dismissing with prejudice

Plaintiff's claims against SDCC and all the individual defendants in their official capacity, Plaintiff's remaining claims against the individual defendants relate to alleged violations of his First Amendment Right to Receive Mail and Access the Courts (Counts I–IV) and an allegation of First Amendment Retaliation (Count V). (Screening Order, ECF No. 16; Am. Compl., ECF No. 13).

Under Count I, Plaintiff alleges that on July 13, 2011, he received mail from the law library at SDCC that included an order to show cause from the Nevada Supreme Court, which was post-marked June 22, 2011. (Am. Compl. at 4–5, 7–11, ECF No. 13). Plaintiff alleges that because his mail was withheld by prison officials until July 13, 2011, he was unable to respond to the order to show cause and his appeal was dismissed, resulting in the loss of property. (*Id.*). Under Count II, Plaintiff alleges that on July 19, 2011, he received mail from the Nevada Supreme Court, which was post-marked July 6, 2011. (*Id.* at 5, 12–14). Plaintiff does not allege any harm that occurred from this delay. (*Id.*). Under Count III, Plaintiff alleges that on June 4, 2013, he received three pieces of legal mail that were post-marked between May 22, 2013 and May 29, 2014. (*Id.* at 6, 15–16). Due to this delay, Plaintiff contends his fourteen-day period to file a motion for rehearing had run. (*Id.*). Under Count IV, Plaintiff alleges that on April 25, 2013, he received an opposition to his motion for summary judgment in a breach of contract case that was post-marked April 15, 2013. (*Id.* at 6, 17–18). He contends that the SDCC withheld his mail for over ten days, thereby prejudicing his ability to timely reply and defend his claim. (*Id.*). Finally, under Count V, Plaintiff contends that Defendant Smith violated his right of access to the Courts by denying two of his requests to use the prison law library in retaliation for his filing of prior grievances against SDCC employees for withholding his mail. (*Id.* at 6, 19–20).

## II.    LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III.   DISCUSSION**

    **A.   First Amendment Right to Access the Courts and Mail**

Prisoners have a constitutional right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 346 (1996).  However, to establish a violation of this right, a prisoner must show that he or she has suffered an "actual injury," which is defined as "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id.* at 348–49; *see also Alvarez v. Hill*, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) (explaining that failure to show that a non-frivolous legal claim has been frustrated is fatal to a claim for denial of access to legal materials).  Additionally, the right of access to the courts is

only a right to bring complaints to the federal court and not a right to discover such claims or to litigate them effectively once filed with a court. *Lewis*, 518 U.S. at 354.  Moreover, the right of access to the courts is limited to non-frivolous direct criminal appeals, habeas corpus proceedings, and § 1983 actions. *Id.* at 354–55; *see also Simmons v. Sacramento Cnty. Super. Ct.*, 318 F.3d 1156, 1159–60 (9th Cir. 2003) (explaining that "a prisoner has no constitutional right of access to the courts to litigate an unrelated civil claim.").

Applying the controlling law to Counts I-IV in Plaintiff's Amended Complaint, the Court finds that these counts must fail as a matter of law.  Regarding Count I, the legal mail that Plaintiff alleges was withheld from him and caused his appeal to be dismissed was an order to show cause from the Nevada Supreme Court related to a motion for return of seized property. (Am. Compl. at 4–5, 7–11, ECF No. 13; Order to Show Cause, Ex. C-1 to MSJ at 9, ECF No. 20-2).  Therefore, this proceeding was not a non-frivolous direct criminal appeals, habeas corpus proceedings, or § 1983 action.  The specific mail in this instance related to Plaintiff's appeal to the Nevada Supreme Court rather than the bringing of his complaint. Therefore, any harm caused by a delay in receiving this legal mail from the state court about an unrelated civil claim did not implicate Plaintiff's constitutional right of access to the courts. *See Lewis*, 518 U.S. at 354–55.

Regarding Count II, beyond the conclusory statement that the delay of his mail interfered with his access to the courts, Plaintiff has failed to allege any harm relating to the withholding of mail on this count. (Am. Compl. at 5, 12–14, ECF No. 13; Resp. 9:10-18, ECF No. 35).   Accordingly, he has failed to show that he has suffered an "actual injury" and this count must fail. *See Lewis*, 518 U.S. at 348–49.

Regarding Count III, the legal mail that Plaintiff alleges was withheld from him and caused him to miss the time to file a motion for rehearing related to a notice that the Ninth Circuit Court of Appeals had denied his Motion for Certificate of Appealability. (Am. Compl.

at 6, 15–16, ECF No. 13; Ninth Circuit Order, Ex. E-1 to MSJ at 10, ECF No. 20-4). The fact that the case was on appeal before the Ninth Circuit demonstrates that Plaintiff was able to obtain access to the courts and file his claim. Plaintiff's contention that the delay in the notice prevented him from effectively litigating his claim on appeal does not amount to a violation of Plaintiff's constitutional right of access to the courts. *See Lewis*, 518 U.S. at 354.

Regarding Count IV, the legal mail that Plaintiff alleges was withheld from him related to a civil breach of contract case. (Am. Compl. at 6, 17–18, ECF No. 13). This proceeding was not a non-frivolous direct criminal appeals, habeas corpus proceedings, or § 1983 action. Additionally, Plaintiff has failed to show that this withholding caused him to suffer an "actual injury." Therefore, any harm caused by a delay in receiving this legal mail did not implicate Plaintiff's constitutional right of access to the courts. *See Lewis*, 518 U.S. at 348–49, 354–55.

### B. First Amendment Retaliation

> Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

*Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). Furthermore, to succeed on a claim of First Amendment retaliation, a prisoner must show that the protected conduct was a "'substantial' or 'motivating' factor" in a defendant's alleged retaliatory decision. *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989) (quoting *Mt. Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274, 287 (1977)). A prisoner must also demonstrate that the defendant's action caused injury, that is, that the alleged retaliatory action actually had a "chilling effect" on the prisoner's exercise of his First Amendment rights. *See Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000).

1          Here, Plaintiff fails to present sufficient evidence to show that his prior grievance filings
2  against SDCC staff were a substantial or motivating factor in the denial of his requests to use
3  the SDCC law library.  Plaintiff alleges that he placed a request to be on the callout list for use
4  of the SDCC law library on June 24, 2013 and July 3, 2013 but that these requests were ignored
5  by the SDCC law library supervisor, Defendant Smith, because of Plaintiff's prior filing of a
6  grievance concerning the withholding of his mail. (Am. Compl. at 6, 19–20, ECF No. 13).
7  However, Plaintiff's conclusory assertion that his requests for library access were denied
8  because of his grievance filing is insufficient to establish the motive element for his retaliation
9  claim.  Plaintiff has failed to offer any evidence, such as a statement or other action taken by
10 Defendant Smith, linking the denial of his access requests to a retaliatory motive.  The fact that
11 Defendant Smith knew of his prior grievance filing coupled with Plaintiff's allegation that his
12 requests for access to the law library were denied are not enough to demonstrate retaliatory
13 motive or to create a genuine issue of material fact on the question of whether Defendant Smith
14 denied Plaintiff access to the library and was motivated by Plaintiff's protected activity in
15 doing so. *See Callegari v. Cambra*, 2006 WL 278585, at *8 (E.D. Cal. Feb. 2, 2006) *aff'd*, 223
16 F. App'x 681 (9th Cir. 2007) (finding that a defendant's knowledge of a lawsuit filed against
17 him was not enough to demonstrate retaliatory motive when defendant denied a prisoner
18 plaintiff access to the prison law library (citing *Keyser v. Sacramento City Unified Sch. Dist.*,
19 265 F.3d 741, 751 (9th Cir. 2001))).
20         Furthermore, Plaintiff fails to offer sufficient evidence that Defendant Smith was even
21 aware of his access requests on June 24, 2013 and July 3, 2013, and in a sworn affidavit,
22 Defendant Smith avers that she never received these alleged requests. (Smith Affidavit ¶ 9,
23 ECF No. 20-6).  If Defendant Smith was not even aware of Plaintiff's requests, then she could
24 not have ignored them in retaliation for his prior grievances. *See Janoe v. Stone*, 2010 WL
25 3057261, at *7 (S.D. Cal. May 17, 2010) ("Plaintiff does not offer any evidence to show that

Stone was actually aware of his request for law library access for May 3, 2005 and May 11, 2005.  If Stone was not aware of Plaintiff's requests, she could not have acted deliberately in retaliation for Plaintiff's submission of the June and July 2004 grievances.").  Plaintiff offers no evidence that Defendant Smith received his requests.  The only fact offered by Plaintiff to support his contention that Defendant Smith deliberately denied his requests in retaliation is the "significant amount of time in between" when Plaintiff filed a grievance on June 12, 2013 and the next time Plaintiff was scheduled to use the law library. (Resp. 5:7-16, 6:10-14, ECF No. 35).  However, the Inmate Request Forms attached to Defendants' motion show that Plaintiff requested access to the law library on May 3, 2013, July 30, 2013, and September 7, 2013, and his requests on these dates were all granted. (Inmate Request Forms at 6–9, ECF No. 20-6).  These forms show that about seven weeks passed between when Plaintiff filed his grievance until he was granted access to the law library on July 30, 2013.  They also show that about eight weeks passed between Plaintiff's granted request on May 3, 2013 and his alleged denial of access on June 24, 2013 and that about five weeks passed between his two later granted requests on July 30, 2013 and September 7, 2013. (*Id.*).  Accordingly, a gap of seven weeks between Plaintiff's grievance filing and his next visit to the law library does not appear to be an unusual or significant length of time and does not show that Defendant Smith knew of Plaintiff's June 24, 2013 and July 3, 2013 requests or that she denied them in retaliation for the June 12, 2013 grievance.

       The undisputed evidence that Defendant Smith regularly granted Plaintiff's access requests both before and after his grievance filing further undercuts Plaintiff's claim of a retaliatory motive.  Additionally, not only did Defendant Smith grant Plaintiff access to the law library about a month after she allegedly denied him access in retaliation, but on July 3, 2013 and July 16, 2013, Defendant Smith asked to meet with Plaintiff about his mail withholding grievance and his claim of being denied access to the library. (Smith Affidavit ¶ 7–8, ECF No.

20-6). Plaintiff, however, never responded or followed up with her. (*Id.*). These actions on the part of Defendant Smith indicate that she did not have the alleged retaliatory motive necessary to support Plaintiff's claim. *See Janoe*, 2010 WL 3057261, at *7 ("Further, the undisputed evidence presented to the Court indicates that if Stone harbored the alleged retaliatory motive against Plaintiff, she acted contrary to that alleged motive. On May 17, 2005, Stone included Plaintiff on the ducat list for law library access for two sessions. If Stone had a retaliatory motive on May 3, 2005 for Plaintiff's submission of grievances in June and July 2004, a trier of fact would expect Stone to maintain that retaliatory motive two weeks later on May 17, 2005.").

Plaintiff's claim of retaliation also fails because he has failed to sufficiently establish that he was actually injured by the alleged retaliation. Plaintiff alleges that he was injured because the denial of his access to the law library "chilled [him] from being able to respond to the Courts." (Am. Compl. at 20, ECF No. 13). However, "while denial of access to the law library may be inconvenient, it does not rise to the level of an adverse action that has chilled Plaintiff's exercise of his First amendment rights." *East v. California Dep't of Corr.*, 2011 WL 1205240, at *4 (E.D. Cal. Mar. 29, 2011) (explaining that a *cognizable* retaliation claim must be of a sufficient magnitude to inflict meaningful harm, not law library access). Moreover, Plaintiff's efforts to pursue court cases and grievances against SDCC employees does not appear to have actually been chilled because he obtained access to the law library less than a month after the alleged retaliation and continued to obtain access to the library expressly for the purpose of pursuing various court cases and grievances. (Inmate Request Forms at 6–8, ECF No. 20-6); *see Clement v. Gomez*, No. C 97-382 MJJ(PR), 2000 WL 356360, at *3 (N.D. Cal. Mar. 28, 2000) ("There is also no genuine issue of material fact that plaintiff's filing of grievances was chilled. Plaintiff continued to file grievances shortly after the two incidents. . . ."); *see also Resnick*, 213 F.3d at 449 (prisoner was not chilled where he filed grievance

"promptly" after alleged retaliatory action).  Therefore, Plaintiff has failed to present sufficient evidence to establish either a retaliatory motive on the part of Defendant Smith or that the alleged denials of access to the law library actually had a chilling effect on the exercise of his First Amendment rights.  Accordingly,

### IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 20) is **GRANTED** and Plaintiff's Motion to Dismiss the Motion for Summary Judgment (ECF No. 36) is **DENIED**.

The Clerk of the Court shall enter judgment accordingly and close the case.

**DATED** this 11th day of February, 2015.

_____
Gloria M. Navarro, Chief Judge
United States District Judge